# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **Richard Weyland**,<br>　　　Plaintiff,<br><br>v.<br><br>**AMERICAN CRUISE LINES, INC.**<br><br>　　　and<br><br>**CHARLES ROBERTSON,**<br>**Individually and**<br>**In his Official Capacity as President**<br>**of American Cruise Lines, Inc.**<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　CASE NO. _____<br>)<br>)　**Jury Demand**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**Comes Now Plaintiff Richard Weyland,** by and through undersigned counsel, to bring this complaint against American Cruise Lines and Charles Robertson, President, in his official and personal capacity, for constructive termination in violation of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.040(1)(a), as follows:

### PARTIES

1. Plaintiff Richard Weyland is an individual who was domiciled at 2366 New Lair Road, Cynthiana, KY 41031, and employed by American Cruise Lines, Inc. during the relevant times.

2. Plaintiff is currently a resident of Texas due to his current employment, residing at 1115 Hwy 146 N, Apt 908, Texas City, Texas 77590.

3. Defendant American Cruise Lines is a company with its principal place of business located at 741 Boston Post Road, Suite 200, Guilford, Connecticut 06437.

4. Defendant Charles Robertson is the president of American Cruise Lines located at the address above in 2.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as plaintiff and defendants are domiciled in different states, and the amount in controversy exceeds $75,000.00.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), which includes a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7. Defendant's contacts with Kentucky include employing a Captain (Plaintiff) who was a resident of Kentucky, and whom Defendant flew to and from cruises in various states. Defendant also operated cruises which docked in Kentucky.

8. Plaintiff's last work for Defendant occurred in Kentucky, before and after docking in Paducah, Kentucky.

## FACTS OF THE COMPLAINT

9. Plaintiff was employed by Defendant in the position of Captain from May 24, 2019, until at least July 2021.

10. Plaintiff's job consisted of managing the entirety of the vessel and operations to and from various ports for one-way passenger river cruises.

11. In 2019, Plaintiff was assigned to the Snake River for generally 7-day cruises. Toward the end of 2019, Plaintiff was instructed to complete the season by working a few weeks of cruises on the Mississippi River.

12. The Mississippi River is more complicated in its conditions due to traffic than the Snake River, so the Mississippi River assignment included a pay raise.

13. In 2020, the regular cruise season was suspended due to COVID-19. When a hurricane blew in, three captains including Plaintiff were selected to relocate vessels from New Orleans, up the Mississippi River to safer conditions, and return the vessels after the hurricane conditions had abated.

14. Also in 2020, Plaintiff was selected as the only captain in company history to relocate a vessel from New Orleans, Louisiana, to Astoria, Washington without management present. Defendant produces a glossy printed periodical in which Plaintiff was celebrated for this accomplishment at the time.

15. In 2021, Plaintiff was assigned to manage cruises which were in whole or in part on the Mississippi River.

16. Plaintiff understood his standard schedule to be 4 weeks on a vessel, then 2 weeks off. Unless another captain was available to fill in, Plaintiff was unable to depart the vessel.

17. Defendant was chronically short-staffed. Plaintiff received calls from Operations Manager Scott Baube every week or two assigning Plaintiff additional weeks of work well beyond the initial four weeks.

18. At times, through the course of communications, Plaintiff was aware that Operations Manager Baube was filling in as a captain of a vessel due to the extreme staff shortages of captains.

19. Plaintiff's time off in 2019 amounted to one break of 3 weeks length during the entire season he worked June-November, and a mere few days between Snake River and Mississippi River assignments.

20. Plaintiff's time off in 2021 between January and July totaled 10 days in February.

21. Defendant's policy after covid began was to require a negative covid test prior to boarding the vessel. Plaintiff submitted to required tests before boarding vessels during the relevant time.

22. While Plaintiff was on his same vessel in 2021 between February and June traveling the Mississippi River back and forth continuously with no relief, Defendant issued a memo regarding a change in policy to require a covid vaccine instead of simply a negative test.

23. Plaintiff was aware of news of other companies in New York requiring vaccines and people's religious exemptions being denied and people fired who had a sincerely held religious belief against the vaccines.

24. Because Plaintiff had such a strong belief that the vaccines would be a sin for him to receive, he first called his wife to discuss the possibility of being wrongfully terminated for his sincerely held religious belief against receiving the vaccine.

25. Plaintiff then called Operations Manager Baube on the phone to alert him that he was seeking medical exemption from the vaccine requirement, stating that he was a confirmed Baptist and that the covid vaccine requirement would not work with his beliefs.

26. To expedite the approval for his exemption, Plaintiff also indicated to Mr. Baube that as the captain he could not leave the vessel until another captain could take over (presumably to take the vaccine, he would need to leave the vessel). Seeing they were

short staffed and nobody could relieve Plaintiff, Plaintiff verbalized that Defendant that could not do anything immediately against Plaintiff regardless of the vaccine policy.

27. To the best of Plaintiff's recollection, Manager Baube indicated to Plaintiff that it was true they had nobody else, so Plaintiff would not be required to comply until after he went on break from the current tour.

28. Plaintiff never received an affirmative confirmation of religious exemption, negotiation on permanent accommodations, or any other expected employer actions when in receipt of a request for religious accommodation under the law.

29. Plaintiff was aware of many other employees receiving the vaccine, as he had to approve staff asking to take breaks to leave the vessel at port locations to receive the vaccine.

30. On July 7, 2021, Plaintiff was midway through the first trip of that season that extended all the way from New Orleans to Nashville in an extended 10 day cruise schedule. After having been docked at Paducah, Kentucky, since the previous afternoon, Plaintiff started the vessel at 4 a.m. heading east down the Cumberland River through Kentucky and then took a nap.

31. After a full shift 6am-noon, Plaintiff took required time to sleep again while the Mate continued on the preset navigation. At approximately 1:30 p.m., Plaintiff was awakened by a deckhand knocking who indicated that there was a problem and the vessel was stopped.

32. Plaintiff dressed and returned to find the Mate had run into the mud and veered far off course to the side of the channel where it was not safe for vessels to navigate. Within approximately 5 minutes, Plaintiff was able to make contact with Operations Manager

Baube who was the responsible person under Defendant's policy to address required contacts with the Coast Guard for notifications of incidents.

33. Plaintiff was familiar with the Coast Guard requirements in part due to having been the responsible party for Coast Guard contacts when he worked on the Snake River. However, under Defendant's policy, the Mississippi River vessels did not complete the forms or make the calls directly but reported directly to the Operations Manager.

34. The Coast Guard put Plaintiff under investigation which included drug tests of the Plaintiff and Mate, witness statements, and other evidence on policies and procedures, and issued a report after July 22 relating to the incident of the vessel running aground.

35. Plaintiff assisted for three days July 8-10 in attempts to dislodge the vessel and ultimately send all the passengers home, after which Plaintiff was provided a rental car to take leave due to the pending investigation.

36. After two weeks expected leave time, Plaintiff contacted Operations Manager Baube by phone to ascertain the next tour assignment details. At that point, Baube indicated that they would not be assigning another tour to Plaintiff.

37. When Plaintiff questioned Manager Baube why he was not informed earlier so that he could have been seeking alternative employment, Manager Baube indicated that it was not an immediate decision but had been under discussion a while.

38. Plaintiff later requested his personnel file, and found no record of termination whatsoever therein.

39. Plaintiff vigorously sought new employment starting within a few weeks and submitted scores of applications throughout the next several months until finally securing his next employment in March 2023.

40. Between constructive discharge and re-employment, Plaintiff had 2-3 applications trigger interviews, but each time other candidates received the job until the current employer employed Plaintiff beginning in March 2023.

41. Plaintiff sought to mitigate damages as much as possible by searching widely for new employment, including his current employer which required him to move to the state of Texas.

42. Plaintiff incurred financial, mental, familial, and emotional hardship as a result of the lack of employment for 19+ months.

**COUNT I: Constructive Discharge in Violation of Kentucky Revised Statute 344.040.**

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. To state a discrimination claim under the Kentucky Civil Rights Act, Plaintiff must show that the discrimination was unlawful and at least a substantial factor in termination of employment.

45. It is well settled that failure to accommodate actions in violation of company policies based on sincerely held beliefs is unlawful discrimination based on religion.

46. Plaintiff was subjected to an adverse policy to his sincerely held religious beliefs objecting to a covid vaccine, which led constructive discharge as soon as he was given leave for any reason.

47. Under Defendant's policy, Plaintiff would have been required to obtain a covid vaccine in violation of his sincerely held religious beliefs to board a new vessel after leave.

48. Plaintiff's termination could not have been due to the Coast Guard investigation, because plaintiff remained employed for several days following, while being a subject of investigation by the Coast Guard.

49. Plaintiff likewise could not have been terminated due to the Coast Guard report, because the only finding suggested in the report was the lack of a call which according to company policy was a delegated duty which Plaintiff properly executed as far as his duty existed.

50. Plaintiff also could not have been terminated due to the Coast Guard incident since he was legally required to obtain sleep and the events were not of his doing or even linkable to any cause he could be responsible for. Conversely, he was by all accounts potentially the best captain in the company outside of management based on Defendant's previous assignment of an unprecedented responsibility to him alone.

51. Defendant was not willing to accommodate Plaintiff's request for religious exemption by immediately responding positively to the request. Instead, Plaintiff had the next term of leave hanging over his head while he was aboard the current vessel, knowing that he would have a fight on his hands with an unknown result.

52. Defendant's actions were discriminatory toward Plaintiff in violation of the Kentucky Civil Rights Act (KRS 344.040).

53. No other explainable cause other than discrimination exists for a stellar captain to suddenly be terminated during extreme staff shortages.

54. If not the sole factor, religious discrimination was at least a substantial factor causing the termination, which is just as unlawful as if it were the sole factor.

## PRAYER FOR RELIEF

**Wherefore Plaintiff prays this Court issue relief as follows:**

1. Declare that the acts and practices complained of herein are in violation of the Kentucky Civil Rights Act;

2. Award Plaintiff compensatory damages for lost wages for the 19+ months he remained unemployed in the expected amount of $150,000.

3. Award Plaintiff compensatory damages for lost benefits and financial strain he incurred for the 19+ months he remained unemployed in the expected amount of $100,000.

4. Award Plaintiff for additional expenses he has incurred to be employed out of state when he wished to remain in Kentucky, but needed to mitigate his financial strain, in the amount of $50,000.

5. Award Plaintiff compensatory damages emotional distress due to loss of personal dignity and humiliation in the amount of $500,000;

6. Award Plaintiff punitive damages for violations of clearly delineated civil rights in the amount of $1,000,000;

7. Award Plaintiff pre- and post-judgment interest on damages.

8. Award Plaintiff reasonable attorney's fees and costs;

9. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## **VERIFICATION**

The Plaintiff respectfully, through Counsel, Verifies this Complaint to be true and accurate to the best of my knowledge and information this 24th day of July, 2024.


Respectfully Submitted,

 /s/Adrienne Southworth
Adrienne Southworth
112 Poplar Drive
Lawrenceburg, Kentucky 40342
502-600-1547
AttyAky@proton.me
*Counsel for Plaintiff*