UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RICHARD WEYLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:24-cv-00194-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| AMERICAN CRUISE LINES, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on three motions arising from a single dispute over the

timeliness of Plaintiff Richard Weyland's claim under the Kentucky Civil Rights Act. Defendant

American Cruise Lines, Inc. ("ACL") has moved for summary judgment [R. 33], contending that

Weyland's failure to answer its requests for admission conclusively established a July 21, 2021,

termination that renders this suit time-barred. Weyland has moved to withdraw the deemed

admissions [R. 34], has responded in opposition to summary judgment [R. 35], and has moved

for sanctions against defense counsel [R. 36]. For the reasons that follow, Weyland's Motion to

Withdraw Admissions is **GRANTED**, subject to the conditions set forth below; Defendant's

Motion for Summary Judgment is **DENIED**; and Weyland's Motion for Sanctions is **DENIED**.

**I**

Plaintiff Richard Weyland, a former vessel captain for Defendant American Cruise Lines,

Inc., alleges that ACL constructively discharged him for refusing the COVID-19 vaccine on the

basis of a sincerely held religious belief, in violation of the Kentucky Civil Rights Act

("KCRA"), Ky. Rev. Stat. § 344.040. [R. 33 at 1; R. 35 at 1]. Weyland began full-time

employment as a captain on May 24, 2019. [R. 33 at 3]. He alleges that ACL issued a company-

wide vaccination requirement, that he sought a religious exemption, and that he was told he would not need to comply until after his then-current tour. [R. 33 at 3–4].

The events giving rise to the termination began with a maritime incident. On July 7, 2021, while Weyland was captaining a vessel from New Orleans to Nashville, the vessel ran aground after Weyland left his navigation mate in charge and took a rest period. The Coast Guard was notified, and Weyland was placed under investigation. [*Id.*] Weyland was relieved of the remainder of the voyage, sent the passengers home, and after a three-day period was given a rental car and placed on leave pending the investigation. [*Id.* at 4]. ACL contends that they terminated Weyland and his navigation mate "by July 21, 2021" for their roles in the grounding. [*Id.*] Weyland contends he was not unequivocally noticed of termination until July 27, 2021. [R. 33-3 at 3]. This entire case turns on that six-day gap for reasons that become clear only against the limitations backdrop.

Weyland filed his Complaint on July 25, 2024. [R. 33 at 4; R. 35 at 3]. KCRA discrimination claims are now governed by the three-year limitations period of Ky. Rev. Stat. § 413.155(2), which took effect July 15, 2024, shortening a previously five-year period under former Ky. Rev. Stat. § 413.120(2). [R. 33 at 8]. Both parties agree that such a claim accrues on the date the discriminatory act occurs. *See Walker v. Commonwealth*, 503 S.W.3d 165, 172 (Ky. Ct. App. 2016); [R. 33 at 9].

The consequence is that the case turns on a margin of days. Measured against the July 25, 2024, filing, the claim is timely if accrual occurred on or after July 25, 2021, and untimely if it occurred earlier. ACL contends that termination was noticed July 21, 2021, so the three-year deadline fell July 21, 2024, making the filing four days late. [R. 33 at 9]. Weyland contends that the termination was noticed on July 27, 2021, so the filing is timely by two days. The limitations

2

defense thus rises or falls on a single historical fact: the date Weyland received unequivocal notice of termination. Everything else in the litigation is, in substance, a contest over how that fact is to be established, either by Weyland's deemed admission, or by the evidentiary record.

Earlier in this litigation, ACL and co-defendant Charles Robertson moved to dismiss. [R. 15; R. 18]. On September 4, 2025, the Court granted Robertson's motion but denied ACL's motion. [R. 29]. In that same opinion, the Court ordered limited discovery and further briefing confined to the statute-of-limitations question [*Id.*] The authorized discovery was narrow and directed solely at when Weyland's claim accrued, and the parties' subsequent conduct, and disputes, all unfold within that confined scope. The Court has not entered a Scheduling Order in this case, nor has it referred discovery proceedings to a United States Magistrate Judge.

On November 12, 2025, ACL served its First Set of Interrogatories, Requests for Production, and Requests for Admission [R. 33 at 2; R. 33-2 at 1; R. 35-1 at 4]. Mr. Reynolds's transmittal email told Plaintiff's counsel that, because some general requests had been left in the document for convenience, "[t]o the extent they do not impact the statute of limitation issue the Court ordered you not to respond"; the same email stated that "[i]f we need to request another 30 or 60 days to perform limited discovery, given the holidays, I am amenable to do that," and noted that "[t]he court ordered limited discovery—120 days—runs on January 2, 2026" [R. 35-1 at 4].

The seven requests for admission asked Weyland to admit, among other things, that his last working day was July 16, 2021 (RFA No. 1); that he "w[as] verbally terminated on July 21, 2021" (RFA No. 2); the contents of an August 4, 2021 letter to a Captain Bauby (RFAs 3–5); and several pay-related facts (RFAs 6–7). [R. 33 at 2–3]. RFA No. 2 is the only request that goes directly to the dispositive accrual date.

3

Under Fed. R. Civ. P. 36(a)(3), Weyland's responses were due 30 days after electronic service — December 12, 2025. [R. 33 at 3]. Weyland filed no responses by that date. The parties continued to correspond about scheduling, including scheduling an outstanding deposition, through November and December. [R. 35-1 at 1–4]. Weyland's counsel repeatedly advised that she was waiting on third-party AT&T phone records she viewed as essential to the theory of Weyland's case. [*Id.* at 3]. On a December 15, 2025, telephone call, Reynolds informed Weyland's counsel that the 30-day period had elapsed, that he lacked authority to extend it, and that she "would need to seek leave of court" [R. 33-2 at 2; R. 35-3 at 2–3].

What the parties did next is the subject of sharp dispute. By Plaintiff's counsel's sworn account, the December 15 call specifically addressed "whether we needed an extension from the Court to adjust the admissions deadline," and the parties "ultimately . . . decided to draft an agreed order," with whoever had time first to circulate it [R. 35-3 at 2–3]. Eight days later, on December 23, 2025, Reynolds drafted and emailed a "[p]roposed order to kick limited discovery deadline to April on the S/L issue"; Plaintiff's counsel assented without reservation: "That works. You can sign for me and file." [R. 35-1 at 1]. ACL submitted the agreed order [R. 30], and on December 30, 2025, the Court entered that agreed order. [R. 31]. The order granted the agreed order, extended the parties' time "to engage in limited discovery as to the statute of limitations' applicability" through April 3, 2026, and gave ACL until May 4, 2026, to file a dispositive motion on the statute of limitations. [R. 31 at 1]. The order does not mention the requests for admission, and it does not by its terms revive any elapsed time to respond to outstanding written discovery. [R. 31 at 1]. Reynolds said nothing further to Plaintiff's counsel or to the Court about the admissions for the next four months. [R. 35-3 at 3].

Roughly six months into the limited-discovery period, Plaintiff's counsel, still without the AT&T records, had a third-party subpoena issued on March 2, 2026. [R. 35-3 at 3; R. 39 at 4]. AT&T transmitted the records overnight on March 31–April 1, 2026. [R. 35-3 at 3; R. 35-2 at 1]. On April 1, Plaintiff's counsel emailed Reynolds: "Literally YESTERDAY I finally got materials from AT&T and we are trying to go through that[.]" [R. 35-1 at 1]. On the final day of the extended limited-discovery period, April 3, 2026, at 9:34 p.m., Weyland served his completed discovery responses, including the responses to the requests for admission and the AT&T call log. [R. 35-1 at 1; R. 33-2 at 2; R. 33-3 at 13].

Weyland did not admit to RFA No. 2, answering: "Deny. The last day of communication and termination was July 27, 2021." [R. 33-3 at 3]. He answered RFAs 1, 6, and 7 (qualifying the last-working-day and pay items), and objected only to RFAs 3–5 as "beyond scope of discovery pursuant to court order." [R. 33-3 at 3–5]. The AT&T log for Weyland's number records, at items 1038–1039, a call on July 27, 2021, lasting five minutes and twenty-four seconds, placed to Weyland from a number bearing a 203 (Guilford, Connecticut) area code—the location of ACL's principal place of business—while the July 21 entries reflect only sub-twenty-second calls with non-203 numbers. [R. 34-1 at 1, 3; R. 35 at 7–8]. ACL's competing documentary evidence is Exhibit D, an internal spreadsheet ("2021 Marine Officer Terms & Resignations") updated by "J. Stone" on September 17, 2021, listing Weyland's date of separation and last date worked as July 21, 2021. [R. 33-4 at 1].

The dispositive-motion deadline fell on May 4, 2026. ACL timely moved for summary judgment. [R. 33]. ACL did not move on the basis of Weyland's April 3 responses, which it had held for a month; it moved instead to treat the original, unanswered requests as admitted by operation of Rule 36(a)(3), and argued that the deemed admission of RFA No. 2 conclusively

established a July 21, 2021 termination, rendering the suit time-barred [R. 33 at 2, 8–9]. The motion attached Weyland's April 3 responses [R. 33-3] and Reynolds's supporting affidavit [R. 33-2], which recounts the November 12 service and December 15 call and avers that "[m]onths passed without any update, response or motion for extension of time" from Weyland. [R. 33-2 at 2].

Weyland responded with three filings on May 25–26, 2026. He opposed summary judgment, arguing that RFA No. 2 was denied (not admitted), that the AT&T log corroborates a July 27 accrual date, and that Reynolds's own conduct — the November 12 directive, the self-proposed extension, and four months of silence — precludes ACL from winning on a default it engineered. [R. 35 at 1–2, 16–18]. He moved to withdraw any deemed admissions under Rule 36(b). [R. 34]. And he moved for sanctions against defense counsel under 28 U.S.C. § 1927 and the Court's inherent authority, premised on the same sequence of conduct and on the affidavit's omission of the November 12 email and counsel's role in the extension. [R. 36 at 1–8]. ACL replied in support of summary judgment on June 19, 2026, contending that no order or stipulation extended the RFA deadline, that Weyland's reliance theory is a "self-serving interpretation" of the correspondence, and that Weyland's own lack of diligence caused the default [R. 39 at 2–5].

Four motions are now ripe: ACL's motion for summary judgment [R. 33], Weyland's motion to withdraw the deemed admissions [R. 34], Weyland's motion for sanctions [R. 36]; and ACL's motion for an extension of time to file their Reply Brief in support of their motion for summary judgment, [R. 37]. The case has narrowed to two dispositive questions, and they must be taken in order.

6

The first is the motion to withdraw [R. 34], which controls the entire posture. If the deemed admission of RFA No. 2 stands, July 21, 2021, is "conclusively established," Fed. R. Civ. P. 36(b); the call log and the April 3 response denying the request for admission cannot manufacture a dispute against a binding admission; and the suit is time-barred. If the admission is withdrawn, the April 3 denial becomes operative, and the accrual date is open to proof. The Court cannot reach the summary-judgment motion until it resolves the admissions question, because whether a genuine dispute exists depends entirely on whether the admission is set aside.

The second, reached only if withdrawal is granted, is whether the record discloses a genuine dispute of material fact as to the accrual date. That question reduces to a single historical fact: was Weyland unequivocally noticed of termination on July 21, 2021, or on July 27, 2021. Because the limitations defense is timely-or-untimely on that one fact, and because the filing is timely if accrual occurred on any date from July 25, 2021, forward, the materiality of the dispute is not in question, only its genuineness. The sanctions motion [R. 36], by contrast, is not outcome-determinative: it bears on the equities of the withdrawal analysis but does not itself decide the limitations defense.

## II

These motions are ripe, but the case has narrowed to two questions, and the Rules of Civil Procedure dictate the order in which they are taken. A matter admitted under Rule 36 "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). If the deemed admission of RFA No. 2 stands, Weyland's July 21, 2021, termination is conclusively established, the April 3 denial and the AT&T call log cannot create a dispute against a binding admission, and the limitations defense succeeds. If the admission is withdrawn, the denial becomes operative and the accrual date is open to proof.

Whether a genuine dispute exists for summary-judgment purposes thus depends entirely on how the withdrawal question is resolved. The Court accordingly addresses the Motion to Withdraw first, the Motion for Summary Judgment second, and the Motion for Sanctions last.

Three standards govern. Withdrawal of a deemed admission is measured by the two-pronged test the Sixth Circuit drew from Rule 36(b): a court may permit withdrawal (1) when it would subserve the presentation of the merits, and (2) when the party that obtained the admission fails to show that withdrawal would prejudice its case. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997). Neither prong turns on the movant's diligence or the adequacy of his excuse. A tardy or even unexcused response does not lock in the default, for "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted," and the district court retains discretion to accept "an answer that would otherwise be untimely." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009). Satisfaction of both prongs permits, but does not compel, withdrawal, and the ultimate decision is committed to the Court's discretion. *Kerry Steel*, 106 F.3d at 154.

Summary judgment is warranted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying that standard, the Court views the record in the light most favorable to the nonmoving party and may neither weigh the evidence nor make credibility determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). A dispute is genuine if a reasonable factfinder could resolve it in the nonmovant's favor, and material if its resolution could affect the outcome under the

governing law. *Anderson*, 477 U.S. at 248; *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 844 (6th Cir. 2024).

Finally, sanctions against an attorney are available under 28 U.S.C. § 1927 when counsel "multiplies the proceedings in any case unreasonably and vexatiously," 28 U.S.C. § 1927, and under the Court's inherent authority when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Each is a demanding standard, but the two are not the same. Section 1927 is objective, requiring "something less than subjective bad faith, but something more than negligence or incompetence," conduct that "falls short of the obligations owed by a member of the bar to the court." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006); *see Kidis v. Reid*, 976 F.3d 708, 722 (6th Cir. 2020) (attorney must "at least knowingly disregard the risk of abusing the judicial system"). The Court's inherent power is more exacting, requiring an actual finding of bad faith, because "[t]he mere fact that an action is without merit does not amount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). Neither standard is satisfied by vigorous advocacy, by a litigating position the Court ultimately rejects, or by an adversary's selective emphasis of the record.

## A

The Motion to Withdraw controls everything that follows, and it is best approached by confronting head-on the objection that most naturally resists it. Weyland's responses were due December 12, 2025, and were not served until 9:34 p.m. on April 3, 2026, the final day of the extended discovery period. [R. 33 at 3; R. 33-2 at 2]. His explanation for that delay is imperfect. The November 12 "do not respond" instruction, by its terms, reached only out-of-scope requests, and Plaintiff treated RFA No. 2 as in-scope and answerable, objecting to RFA's 3–5. [R. 35-1 at

4; R. 33-3 at 3–5]. His theory that the agreed order enlarged his time to respond is colorable but not airtight, because the Agreed Order does not mention the requests for admission and counsel had been told on December 15 that the elapsed deadline required leave of court. [*Id.* at 1; R. 33-2 at 2]. And his reliance on the awaited AT&T records is undercut by his having waited until March 2, 2026, to subpoena them [R. 35-3 at 3]. Plaintiff, in short, was late, and his reasons are wanting.

But none of that is the question Rule 36(b) asks. The Sixth Circuit's test looks to the presentation of the merits and to prejudice; it does not incorporate the movant's diligence, fault, or the adequacy of his excuse. *Kerry Steel*, 106 F.3d at 154. The deadline Weyland missed is what created the deemed admission in the first place. To treat that same lateness as a reason to deny withdrawal would read the withdrawal mechanism out of the Rule, leaving every missed deadline self-justifying and Rule 36(b) a dead letter. Weyland's delay is properly weighed, but it is weighed at the discretionary stage, as one consideration among several.

The first prong is satisfied. Withdrawal subserves the presentation of the merits where upholding the admission "would practically eliminate any presentation on the merits of the case." *South v. Liberty Ret. Cmty. of Washington Twp., Inc.*, No. 3:05CV359, 2008 WL 11352600, at *2 (S.D. Ohio Mar. 13, 2008). RFA No. 2 asks Weyland to admit that he "[w]as verbally terminated on July 21, 2021," [R. 33 at 3], and that single fact informs the entirety of ACL's summary judgment motion. If it is conclusively established, the action ends on the limitations bar without any inquiry into when the Weyland noticed termination. In *South*, the admission negated a single element of a claim, while here it disposes of the whole case. *Id.* at *3. Weyland's late response denies that he was terminated on July 27, 2026. He corroborates this response by way of the AT&T call log purportedly showing that a phone number with the same area code as

10

ACL's headquarters called him on July 27, 2026, suggesting that this was the phone call where Weyland first learned of his termination. [R. 33-3 at 3; R. 34-1 at 3]. Withdrawal permits the accrual question to be decided on that evidence rather than by default, and the first prong favors withdrawal.

The second prong is ACL's to establish, and the prejudice that defeats withdrawal is narrowly defined. It is "not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth," but the "special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Kerry Steel*, 106 F.3d at 154. The loss of the litigation advantage the default conferred is not, by itself, cognizable. *Id.*

ACL's strongest argument is that Weyland's last-minute service ran out the clock on discovery it was actively pursuing. ACL flagged a limited deposition of Weyland as early as the November 12 transmittal and pressed for December dates; Weyland then served his denial of RFA No. 2 with roughly two and a half hours left in the discovery period, leaving ACL no opportunity to depose him within the time the Court had set. [R. 35-1 at 1–4; R. 39 at 4–5]. The Court takes that grievance seriously. But whether it amounts to cognizable prejudice turns on a distinction the Sixth Circuit's cases draw between evidence that has become unavailable and evidence that is merely deferred.

Prejudice is established where reliance on the admission has irreversibly foreclosed proof. *Riley v. Kurtz*, No. 98-1077, 1999 WL 801560, at *3 (6th Cir. Sept. 28, 1999). In *Riley*, the party that had obtained the admission relied on it by declining to depose or call witnesses on the very point the admission resolved, and his opponent did not move to withdraw it until the third day of trial. *Id.* The court held that allowing withdrawal at that stage would cause the kind

of "special difficulties" Rule 36(b) concerns, because the evidence the opponent would have needed was no longer reasonably obtainable, and it therefore let the admission stand. *Id.* It is not established by the prospect of reopening discovery, re-briefing summary judgment, or absorbing some delay, where the opponent had ample opportunity to develop the evidence during the discovery period. *Clark v. Johnston*, 413 F. App'x 804, 819–20 (6th Cir. 2011); *see also Freeman v. City of Detroit*, 274 F.R.D. 610, 612 (E.D. Mich. 2011).

*South* confirms the point on facts materially identical to these. There, the party opposing withdrawal argued that, in reliance on the deemed admission, it had not deposed two of the plaintiff's treating physicians, and both the discovery cutoff and the dispositive motion deadline had already passed. *South*, 2008 WL 11352600, at *3. The court granted withdrawal notwithstanding, holding that any such prejudice "will be cured" by reopening discovery to permit the depositions and resetting the dispositive schedule. *Id.* The same cure resolves ACL's concern. Because Weyland remains available to be deposed, a brief, targeted reopening of discovery limited to the accrual date supplies ACL the deposition it says it was denied, eliminates any timing-based disadvantage, and confirms that withdrawal does not impair ACL's ability to defend on the merits. ACL has not carried its burden on the second prong, and it too favors withdrawal.

Because both prongs are satisfied, the Rule's threshold for permitting withdrawal is met. The decision, however, remains discretionary, and the Court's discretion is not confined to granting or denying the motion. Rule 36(b) commits to the Court the judgment whether to relieve a party of an admission; Rule 16 commits to the Court the management of the pretrial schedule, including the power to modify a scheduling order for "good cause." Fed. R. Civ. P. 16(b)(4). The Court exercises both authorities together. Under Rule 36(b), it permits withdrawal of the deemed

12

admission of RFA No. 2 so that the accrual date may be decided on the evidence. Under Rule 16(b)(4), it modifies the schedule fixed by the agreed order [R. 31] to reopen limited discovery for the single purpose of allowing ACL the deposition that the late service denied it. Withdrawal restores the merits question, and the reopening ensures that restoring it costs ACL nothing it could have obtained on the original schedule.

The Court owes ACL a candid explanation about why it reaches this result, because ACL's objection is fair. Weyland's responses were months late, his explanations are partial, RFA No. 2 lies outside the November 12 instruction he invokes, and he was told in plain terms on December 15 that the elapsed deadline required leave of court. [R. 33-2 at 2]. A reasonable jurist could weigh those facts more heavily than the Court does, and the Court does not suggest the question is free from doubt. But Rule 36(b) does not ask which side litigated more carefully. It asks whether withdrawal serves the merits and whether ACL would be prejudiced in defending them, and on this record both answers favor the Plaintiff. The extension Weyland relied upon was drafted and circulated by ACL's counsel, with no reservation as to the requests for admission. [R. 35-1 at 1]. ACL did not move to deem the requests admitted when the deadline passed, or at any point in the four months that followed, raising the default for the first time in its dispositive motion after holding Weyland's April 3 responses for a month. [R. 35-3 at 2–3; R. 33]. Denying withdrawal would end a live civil-rights claim on a four-day margin and on a record that contains factual support in favor of Weyland's accrual date theory. Granting it merely returns the parties to litigating the question discovery was opened to answer.

The Court cannot declare, as a matter of law and without a trial, that Weyland was unequivocally noticed of termination on July 21, 2021, rather than July 27, 2021. That is a disputed question of material fact, and the evidence before the Court—the AT&T call log and the

13

ACL spreadsheet—point in opposite directions. Withdrawal does not decide that question in Weyland's favor; it returns the question to the factfinder. ACL loses the admission but remains free to prove a termination notice of July 21 at trial, and now with the benefit of a deposition it had not taken.

The fact that the Weyland may litigate the accrual date does not mean he may do so for free. Withdrawal unwinds the consequence of Weyland's own default, and it does so after ACL expended the effort of preparing a summary-judgment motion built upon an unanswered request for admission, as the Rule then allowed. A litigant who misses the deadline that creates an admission, and who is then relieved of that admission by the Court's grace, is not entitled to a costless do-over. The court in *South* confronted this asymmetry and resolved it by granting withdrawal while requiring the late-responding party to bear the fees its opponent had reasonably incurred on the summary-judgment motion the withdrawal undermined. *South*, 2008 WL 11352600, at *4 (citing *Dynasty Apparel Indus. v. Rentz*, 206 F.R.D. 596, 602 (S.D. Ohio 2001)). The Court adopts that course here. Weyland shall bear the reasonable attorney's fees ACL incurred in preparing its Motion for Summary Judgment [R. 33] to the extent that motion rests on the deemed admission. This condition compensates ACL for work that Weyland's late service made necessary, discourages any treatment of Rule 36 deadlines as optional, and makes plain that withdrawal is an accommodation to the merits, not a reward for delay.

Both prongs of *Kerry Steel* are satisfied; the equities, weighed at the discretionary stage, do not counsel otherwise, and the Court need not resolve Weyland's allegations of attorney misconduct to reach this result. The Motion to Withdraw [R. 34] is **GRANTED** on the conditions stated, and the Plaintiff's April 3, 2026, responses [R. 33-3] are deemed operative.

**B**

With the admission withdrawn, the foundation of ACL's summary-judgment motion gives way. ACL did not move on the strength of Weyland's April 3 responses, which it had held for a month, but on the theory that the unanswered requests were admitted by operation of Rule 36(a)(3), and that the deemed admission of RFA No. 2 conclusively established a July 21, 2021, termination date that rendered the suit time-barred. [R. 33 at 2, 8–9]. That theory cannot outlast the admission on which it rests. *See* Fed. R. Civ. P. 36(b) (a matter admitted is "conclusively established" unless the court permits the admission to be withdrawn). The Court therefore takes the motion as it must now be taken, and on that record summary judgment cannot be granted.

Two features of the record foreclose it. The first is materiality, which is not in dispute. The limitations defense rises or falls on a single historical fact: whether Weyland received unequivocal notice of termination on July 21, 2021, or on July 27, 2021. Measured against the July 25, 2024, filing, the claim is untimely if accrual occurred on July 21 and timely if it occurred on July 27; the parties agree that a KCRA claim accrues on the date the discriminatory act occurs. *See* Walker, 503 S.W.3d at 172. The disputed fact is outcome-determinative, and a fact that may affect the outcome of the suit under the governing law is material. *Anderson*, 477 U.S. at 248.

The second feature is genuineness, and the record supplies it from both directions. Supporting a July 27 accrual, Weyland's April 3 response denies RFA No. 2 and fixes the date at July 27, 2021, and the third-party AT&T call log records, at items 1038–1039, a call placed to Weyland on July 27, 2021 lasting five minutes and twenty-four seconds from a number bearing a 203 (Guilford, Connecticut) area code (the location of ACL's principal place of business) while the July 21 entries reflect only sub-twenty-second calls from non-203 numbers. [R. 33-3 at 3; R.

15

34-1 at 1, 3; R. 35 at 7–8]. Supporting a July 21 accrual, ACL offers Exhibit D, an internal

spreadsheet updated by "J. Stone" on September 17, 2021, listing Weyland's separation and last

date worked as July 21, 2021. [R. 33-4 at 1]. Crediting the call log, a reasonable factfinder could

find that Weyland was unequivocally noticed of termination on July 27; crediting the

spreadsheet, it could find July 21. That is a genuine dispute. *See Anderson*, 477 U.S. at 248 (a

dispute is genuine where the evidence would permit a reasonable jury to return a verdict for the

nonmoving party).

Resolving it would require the Court to weigh the call log against the spreadsheet, to

judge which documentary account is the more reliable, and to decide a contested question of fact.

The law forbids such an inquiry. The Court does not weigh evidence or assess credibility on

summary judgment; it asks only whether a reasonable factfinder could return a verdict for the

nonmovant, and here one plainly could for either side. *Anderson*, 477 U.S. at 249, 255. The

Court therefore cannot answer the question on which the entire limitations defense depends.

Summary judgment is **DENIED**.

C

Weyland moves for sanctions against defense counsel under 28 U.S.C. § 1927 and the

Court's inherent authority, resting on the sequence of conduct recounted in Part I and, in

particular, on the omission from counsel's supporting affidavit of the November 12 "do not

respond" email and of counsel's own role in drafting the agreed extension [R. 36 at 1–8].

Section 1927 reaches an attorney who "multiplies the proceedings in any case

unreasonably and vexatiously." 28 U.S.C. § 1927. The standard is an objective one: sanctions do

not require a finding of subjective bad faith, but they require more than negligence or a position

the Court ultimately rejects; the statute exists to deter dilatory litigation practices and to punish

16

aggressive tactics that far exceed zealous advocacy. *Red* Carpet, 465 F.3d at 646 (citing *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)). The Court's inherent power to sanction is narrower still, reserved for conduct undertaken in bad faith. *Chambers*, 501 U.S. 32, 45–46 (1991); *Metz*, 655 F.3d at 489. The record meets neither standard.

The conduct Weyland identifies is advocacy at the margins of a genuinely close limitations dispute, not the vexatious multiplication of proceedings § 1927 condemns. ACL's litigating position is a position the Court has declined to adopt, but it was colorable, grounded in the text of Rule 36(a)(3), and pressed in the ordinary course of an adversarial contest. Advancing a colorable reading of the Rule in a single round of motion practice is not conduct counsel "reasonably should know" is frivolous, and it did not unreasonably multiply these proceedings; it framed the very dispute the Court's limited-discovery order contemplated. *Red Carpet*, 465 F.3d at 646.

Nor does the affidavit supply a basis for sanctions under either source of authority. That it recounted the November 12 service and the December 15 call while omitting the November 12 "do not respond" language and counsel's authorship of the extension is the familiar stuff of partisan emphasis. Weyland was free to supply the missing context, and did, in the very filings now before the Court. An affidavit that stresses the facts favorable to its proponent, without misstating the facts it leaves out, is not objectively unreasonable advocacy under § 1927, and it falls well short of the bad faith the inherent power demands. The Court has already weighed the full sequence of conduct and has declined to rest its decision on any finding of misconduct. Having considered that conduct once, in the place the Rules make it relevant, the Court finds in it no independent ground for sanctioning counsel. The Motion for Sanctions [R. 36] is **DENIED**.

17

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Weyland's Motion to Withdraw Admissions **[R. 34]** is **GRANTED**.

    a. The matters deemed admitted by operation of Rule 36(a)(3) from the requests for admission served November 12, 2025—including RFA No. 2—are **WITHDRAWN**, and Plaintiff's April 3, 2026, responses **[R. 33-3]** are deemed the operative responses.

2. Plaintiff **SHALL** bear the reasonable attorney's fees American Cruise Lines, Inc. incurred in preparing its Motion for Summary Judgment **[R. 33]** to the extent that motion rested on the deemed admission.

    a. Within **twenty-one (21) days** of the entry of this Order, ACL may file a statement of those fees, supported by appropriate documentation. Response and Reply briefs to this statement shall be filed in accordance with the local rules.

3. Plaintiff's Motion for Sanctions **[R. 36]** is **DENIED.**

4. Defendant's Motion for Extension of Time **[R. 37]** is **DENIED as moot**.

5. Defendant's Motion for Summary Judgment **[R. 33]** is **DENIED without prejudice** and with **leave to refile**, subject to the conditions of Paragraph 6(b), below.

6. **<u>Limited Discovery</u>**

    a. The parties shall have **forty-five (45) days** from the entry of this Order to engage in limited discovery as to the state of limitations' applicability;

18

b. Defendant American Cruise Lines shall have **thirty (30) days** after the close of limited discovery to file a dispositive motion(s) as to the statute of limitations; and

c. Any responses and replies shall be filed in accordance with the local rules.

This 9th day of July, 2026.

Gregory F. Van Tatenhove
United States District Judge

19